AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Northern District of California

FILED
APR 29 2015
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

United States of America
v.
Donnie Bell,
Dwight Hart, and
Antonio Johnson

*Defendant(s)*

Case No.

EDL

3-15-70529

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 28, 2015__ in the county of __San Francisco__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 924(c); 2112; 2 | Robbery of Personal Property of the United States; Using/Carrying/Possessing Firearm During/Relation to Crime of Violence; Aiding & Abetting |
| | Penalties:<br>18 U.S.C § 924(c): Max. Prison Term - Life, not less than 7 yrs; Max. Fine - $250,000; Max. Supervised Rel. - 5 yrs; Mand. Spec. Assessment - $100.<br>18 U.S.C § 2112: Max. Prison Term - 20yrs; Max. Fine - $250,000; Max. Supervised Rel. - 3 yrs; Mand. Spec. Assessment - $100. |

This criminal complaint is based on these facts:

Please see attached affidavit of ATF Special Agent Daniel Garza.
(Approved as to form _____ AUSA Scott D. Joiner)

☑ Continued on the attached sheet.

*Complainant's signature*

Daniel Garza, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Apr 29, 2015

*Judge's signature*

City and state: San Francisco, CA

Magistrate Judge Elizabeth D. Laporte
*Printed name and title*

# AFFIDAVIT OF DANIEL GARZA
# IN SUPPORT OF CRIMINAL COMPLAINT

I, Daniel Garza, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives being duly sworn, hereby declare and state the following:

## I. INTRODUCTION

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since April 2013. During this time, I have investigated, among other things, violations of the federal firearms and narcotics laws, as well as crimes of violence and gang-related crimes. I have participated in the execution of criminal arrests and have received training in, among other things, criminal procedure, search and seizure, firearms and narcotics investigations, and the identification and investigation of organized gangs. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

## II. PURPOSE OF THIS AFFIDAVIT AND RELEVANT LAW

2. This affidavit is being submitted in support of a criminal complaint charging Donnie BELL, Dwight HART, and Antonio JOHNSON, with violations of 18 U.S.C. §§ 924(c), 2112 and 2.

3. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that, on or about April 28, 2015, Donnie BELL, Dwight HART, and Antonio JOHNSON, violated 18 U.S.C. §§ 924(c), 2112 and 2. The statements contained in this affidavit

1

are based on information provided to me by law enforcement officers and records, as well as my training, experience, and personal knowledge of this investigation.

4. The relevant sections of the United States Code provide as follows:

    A. Title 18, United States Code, Section 924 (c), states in pertinent part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime ... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall [be in violation of the law and punished as described therein].

    B. Title 18, United States Code, Section 2112, states in pertinent part:

> Whoever robs, or attempts to rob another of any kind or description of personal property belonging to the United States, shall be imprisoned not more than fifteen years.

    C. Title 18, United States Code, Section 2, states in pertinent part:

> Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

### III. PROBABLE CAUSE

5. On or about April 28, 2015, ATF Special Agents (SA) conducted an undercover (UC) operation in San Francisco, California, in an attempt to purchase a firearm from an individual known as "Dee."

6. Two ATF Confidential Informants (CI),[1] referred to herein as CI 1 and CI 2, both acting in a UC capacity, made arrangements through a third party ("BROKER") to meet with "Dee" to purchase a 9mm pistol for nine hundred dollars ($900) on or about April 28, 2015. An additional one hundred dollars ($100) was also supposed to be paid to BROKER for setting up

---

[1] The CIs have worked for ATF in the past and received leniency in their own prosecutions for unrelated matters. In this case, the informants are receiving pecuniary payments for their assistance.

2

the transaction. The CIs arranged to meet "Dee" at the Chevron Gas Station located at 1000 Harrison Street. Prior to the operation CI 1 and CI 2 were equipped with audio and video recording equipment to record the encounter. CI 1 was equipped with an audio transmitter. CI 2 was equipped with audio and video recording equipment that did not have a transmitter. CI 1's audio transmitter allowed law enforcement to monitor audio of the transaction during the operation. The CI's were also given pre-recorded government funds to complete the transaction.

7. On April 28, 2015, at approximately 1445 hours CI 1 and CI 2 arrived at the pre-arranged location. I was parked in an unmarked vehicle near the gas station in the vicinity of Harriet and Harrison Streets. ATF Task Force Officer ("TFO") Derrick Lew was with me. We were able to observe CI 1 and CI 2 as they pulled into the gas station. We were also able to monitor the audio broadcast from CI 1's audio transmitter. We observed CI 1 and CI 2 park their vehicle and wait for "Dee" to arrive to complete the pre-arranged purchase.

8. I and TFO Lew repositioned our vehicle to another location where we could better observe the transaction. While we were doing so, we did not see "Dee" arrive, but based on audio transmissions that I heard, a debrief that I conducted with CI 1 and CI 2, and my review of the recorded audio and video of the transaction, I believe "Dee" arrived at approximately 1510 hours. CI 1 and CI 2 then met with "Dee" and a second unidentified male inside the CI vehicle which was parked in the Chevron parking lot

9. Following a brief conversation, I and TFO Lew heard money being counted out via the audio transmitter. Following the counting of the money, I could hear either CI 1 or CI 2 say "Ok, Ok, Ok!" Shortly thereafter I and TFO Lew observed two individuals exit the vehicle and run toward a blue 4-door, Chrysler 300 sedan parked facing south bound in the vicinity of 155 Harriet Street, San Francisco. One of the individuals, later identified as "Dee," was wearing

a red colored top. The second unidentified individual was wearing a black colored top.

10. I and TFO Lew saw "Dee" and the second individual enter the blue Chrysler 300. The vehicle then drove, in reverse, northbound against the flow of traffic on Harriet Street, a one way street, toward Folsom Street at a high rate of speed. As the Chrysler was departing the area at a high rate of speed, one of the CIs called TFO Lew on his cell phone and informed us that they had been "robbed" by "Dee" and the second individual. TFO Lew informed nearby San Francisco Police Department (SFPD) units of the description of "Dee's" vehicle. I did the same for nearby ATF units.

11. A few minutes after the blue Chrysler 300 fled the vicinity of the Chevron Gas Station it was stopped by SFPD personnel near the intersection of Hayes Street and Polk Street. The blue Chrysler 300 was occupied by Donnie BELL, Dwight HART, Antonio JOHNSON, and another individual. Antonio JOHNSON was driving. CI 1 and CI 2 each subsequently identified BELL and HART as the individuals that had robbed them. In particular, CI 1 and CI 2 independently identified HART as "Dee," the individual who was wearing the red colored top. CI 1 and CI 2 each independently identified BELL as the second individual who was wearing the black top. Donnie BELL, Dwight HART, Antonio JOHNSON, and the fourth individual in the vehicle were taken into custody by SFPD.

12. I and TFO Lew debriefed CI 1 and CI 2 about what happened. According to the debrief, and as corroborated by the audio and video recording that I reviewed, instead of selling a firearm to CI 1 and CI 2, HART and BELL brandished their own firearms, took the $900, and ran. CI 1 and CI 2 told us that they met with BELL and HART in the parking lot of the Chevron. BELL and HART both entered the back seat of the CI vehicle. HART sat in the rear passenger seat and BELL sat in the rear driver side seat. CI 1 and CI 2 then began to talk with BELL and

HART. During the course of their conversation CI 2 observed HART handling what appeared to be a pistol in his waist band. CI 1 observed BELL brandishing a white and black "zebra" striped firearm.

13. CI 1 told us that he then counted out the government funds for the pre-arranged transaction. CI 1 observed BELL holding and waiving the "zebra" striped firearm in the direction of CI 2. Neither BELL nor HART handed over the gun as agreed. Instead, BELL then offered to sell CI 1 and CI 2 the "zebra" striped firearm in addition to the firearm they were supposed to purchase. CI 1 informed them that they did not have any enough money to buy two guns. CI 1 handed over the money to HART. BELL continued holding the "zebra" striped firearm in plain view. CI 2 told BELL and HART "Ok, Ok, Ok!" as CI 1 handed over $900.00 in government funds. After taking the government funds, HART and BELL got out of the CI vehicle and ran to the blue 4-door, Chrysler 300 as described above.

14. A subsequent search of the Chrysler 300 by ATF personnel revealed, among other things, one (1) Sturm, Ruger & Company .22 caliber firearm loaded with ammunition. The Ruger firearm was wrapped in white and black "zebra" striped tape. $900.00 total in US Currency was recovered from the vehicle and one of the occupants. $780.00 was found in the center console of the Chrysler 300 and $120.00 was found on the person of Dwight HART. The serial numbers on the currency match the serial numbers of the pre-recorded funds provided to CI 1 to complete the transaction.

## IV. CONCLUSION

15. For the reasons stated above, I believe there is probable cause to believe that, on or about April 28, 2015, Donnie BELL, Dwight HART, and Antonio JOHNSON, violated 18

//

/ /

/ /

/ /

U.S.C. §§ 924(c), 2112, and 2.

*[signature]*
Daniel Garza
Special Agent, Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn to and subscribed before me
this 29 day of April 2015.

*[signature]*
HON. ELIZABETH D. LAPORTE
UNITED STATES MAGISTRATE JUDGE